*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRENT OHMILL BROWN, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 355208
Kent Circuit Court
LC No. 19-007686-FC

ON REMAND

Before: M. J. KELLY, P.J., and RICK and YATES, JJ.

PER CURIAM.

Defendant, Brent Brown, Jr., was convicted following a jury trial of assault with intent to murder, MCL 750.83; intentional discharge of a firearm from a vehicle, MCL 750.234a; felon in possession of a firearm, MCL 750.224f; and three counts of carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 840 months to 125 years' imprisonment for the assault with intent to murder conviction; 152 months to 70 years' imprisonment for the discharge of a firearm from a vehicle conviction; 76 months to 70 years' imprisonment for the felon in possession of a firearm conviction, and 5 years' imprisonment for each count of felony-firearm, to be served consecutively to, and preceding, the other felony sentences. Brown appealed in this Court. As relevant to the instant case, he argued that his within-guidelines sentences were disproportionate because the trial court did not consider mitigating factors when fashioning his sentences. Because Brown did not identify an error in the scoring of the guidelines or any inaccuracy relied upon by the trial court when determining his sentence, we concluded that, under MCL 769.34(10), he was not entitled to a review of the proportionality of his sentence. *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued June 16, 2022 (Docket No. 355208), p 9. Consequently, we affirmed his convictions and sentences. *Id*. unpub op at 1.

Brown then filed an application for leave to appeal in the Michigan Supreme Court. While his application was pending, our Supreme Court decided *People v Posey*, 512 Mich 317; 1 NW2d 101 (2023) (*Posey I*). In *Posey I*, our Supreme Court determined—albeit without reaching a

consensus on the reasoning for its holding—that MCL 769.34(10) was unconstitutional. *Posey I*, 512 Mich at 326 (opinion by BOLDEN, J., joined by BERNSTEIN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390-392 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).[1]  Thereafter, in lieu of granting Brown leave to appeal, the Supreme Court vacated our prior opinion "to the extent that it is inconsistent" with the decision in *Posey I*, remanded to this Court for reconsideration in light of *Posey I*, and denied leave to appeal in all other respects. *People v Brown*, 997 NW2d 213 (2023).  Having reconsidered Brown's proportionality argument in light of *Posey I*, we conclude that Brown has not rebutted the presumption that his within-guidelines sentence is proportionate.  Therefore, we affirm.

## I.  BASIC FACTS

The underlying facts were set forth in our prior opinion:

> Javon Holloway was shot dead on June 4, 2019, after Brown instigated a shootout outside a home on Temple Street.  Prior to the shootout, Holloway was sitting outside the home with some of his friends and family.  Several witnesses saw Brown drive down the street and fire multiple gunshots out of the window of his vehicle.  Brown exited his vehicle in a church parking lot and continued to fire his gun toward Holloway.  Holloway and his cousin returned fire from the front yard of the Temple Street home.  During the exchange of gunfire Holloway was struck in the head.  At trial, it was suggested that Holloway's cousin was the one who fired the fatal shot.  During a police interview, Brown admitted that he fired a gun, but stated that had been acting in self-defense. [*Brown*, unpub op at 1.]

## II.  PROPORTIONALITY REVIEW OF A WITHIN-GUIDELINES SENTENCE

### A.  STANDARD OF REVIEW

Brown argues that he is entitled to resentencing because his sentence is disproportionate. As recently explained by this Court in *People v Purdle*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 353821); slip op at 5:

> "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).  The sentencing court abuses its discretion if the sentence imposed is disproportionate to

---

[1] Although *Posey I* is technically not binding on this Court because there was no majority opinion, its principal holdings upon which a majority of the justices agreed will be applied to subsequent cases in the interest of judicial economy and jurisprudential stability.  See *People v Purdle*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 353821); slip op at 4.

the seriousness of the circumstances involving the offense and the offender. See *id*. at 460.

## B. ANALYSIS

"With regard to a within-guidelines sentence, 'there is a nonbinding presumption of proportionality.' " *Id*. at ___; slip op 5, quoting *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (*Posey II*) (Docket No. 345491); slip op at 2. It is the defendant who bears the burden of rebutting that presumption. *Purdle*, ___ Mich App at ___; slip op at 5. In *Posey II*, this Court explained:

> "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). [*Posey II*, ___ Mich App at ___; slip op at 2-3.]

On appeal, Brown does not contest the seriousness of the offense. Indeed, the seriousness and egregiousness of the offense is undeniable. Prior to the June 2019 shooting, Brown directed a number of Facebook messages to Holloway and his family. The text of the messages is set forth in our prior opinion, see *Brown*, unpub op at 2-3, and will not be repeated here. As we explained in our prior opinion, however, the messages

> allow for an inference that Brown and Holloway were "beefing," that Holloway wanted to "get along" but Brown did not want to, and that Brown was making threats toward Holloway. Those threats included what appears to be a deadline for Holloway and Holloway's brother to leave the neighborhood, an indication that Brown wanted Holloway to "line up" rather than hide, and a reference to Holloway never meeting his "seed," which is presumably a reference to Holloway's children. [*Brown*, unpub op at 4.]

The messages were exchanged in 2017. Thus, they allow for an inference that Brown made threats to harm or kill Holloway and his family more than a year before Holloway was shot dead as a result of a shootout instigated by Brown. Again, witnesses described Brown driving down the street and firing multiple shots from the window of his vehicle. He then exited and continued to fire. At the time, as noted by the trial court during sentencing, Holloway and his cousin were in the yard. However, there were also children nearby that could have been harmed in the crossfire.

The offense was committed with a firearm that Brown, a convicted felon, was not supposed to have. It was part of a continuing pattern of violence against people or property. Ultimately, although Brown was not the individual who killed Holloway, he was the individual who, after making threats of harm to Holloway, opened fire from a moving vehicle at Holloway while he was outside a house on Temple Street.

In addition to the egregiousness of the offense, Brown's history demonstrates that he is unwilling to obey the law. The presentence investigation report (PSIR) reflects that he had an extensive history as a juvenile offender, which included juvenile convictions for assault and battery, second-degree home invasion, and receiving or concealing stolen property. At the time of the instant offenses, Brown was only 21 years of age. Notwithstanding that he had only legally been an adult for a few years, he had already been convicted of multiple offenses as an adult. He had two misdemeanor convictions for domestic violence. He was also convicted of failing or refusing to obey a police officer, carrying a concealed weapon, providing false information to a police officer, aggravated assault, felony-firearm, and assault with intent to do great bodily harm less than murder or by strangulation. Although Brown was sentenced to probation for several of these offenses, the PSIR reflects that he pleaded guilty to probation violations and had his probation revoked. On one occasion, rather than being incarcerated as a result of his probation violation, he was placed on SCRAM. He fell foul of the conditions of his SCRAM release, however. Additionally, the PSIR shows that many of the offenses resulting in adult convictions were committed while Brown was on bond. Finally, at the time that he instigated the shootout leading to Holloway's death, Brown was again on bond. He was also a member of a gang. In light of his probation violations, violations of SCRAM, and recidivist pattern of committing new offenses while on bond, it is plain that Brown is unwilling to obey the law and has already demonstrated a limited potential for rehabilitation.

Assault with intent to murder is a Class A offense for which the maximum penalty is life. MCL 777.16d. Brown was scored 87 points for his prior record variable (PRV), which resulted in him being in PRV Level F, and 200 points for his offense variable (OV), while resulted in him being in OV Level VI. He was also a fourth-offense habitual offender. As a result, his sentence guidelines range for his assault with intent to murder conviction was 270 to 900 months or life. See MCL 777.62. He argues now that his sentence, which is at the high-end of his guidelines range, was disproportionate. And, as indicated above, because he received a within-guidelines sentence, he bears the burden of rebutting the presumption that his sentence is proportionate. See *Purdle*, ___ Mich App at ___; slip op at 5.

Brown argues that several mitigating factors related to himself are sufficient to rebut the presumption of proportionality. First, he argues that he was only 19 years of age at the time of the offense, which he suggests is a fact that lessens his culpability because his brain was not fully developed. Brown, however, was 21 years of age at the time of the offense.[2]

Regardless of that misstatement of fact, Brown directs this Court to a number of legal opinions addressing juvenile offenders. See *Roper v Simmons*, 543 US 551, 574; 125 S Ct 1183; 161 L Ed 2d 1 (2005) (stating that although "the qualities that distinguish juveniles from adults do

---

[2] Brown's date of birth is April 30, 1998, and the date of the offense was June 4, 2019.

not disappear when the individual turns 18," that "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood."); *Miller v Alabama*, 567 US 460, 479-480; 132 S Ct 2455; 183 L Ed 2d 407 (2012) (holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for *juvenile* offenders.") (Emphasis added); *People v Parks*, 510 Mich 225, 244; 987 NW2d 161 (2022) (stating that although "some of the mitigating characteristics in the scientific research submitted by amici and defense counsel apply to young adults, in some form, up to the age of 25," the line is currently drawn at 18 years of age). Brown also directs this Court to secondary sources, including law review articles,[3] a law journal article,[4] and a nonfiction book.[5] As a whole, the secondary sources stand for the proposition that the brains of individuals between the age of 18 and 25 (or possibly older) are not yet fully matured. We are not persuaded that the above caselaw, which draws the line for adulthood at 18 years of age, should be extended to adult offenders. Nor do we find persuasive Brown's citation to secondary sources suggesting, amorphously, that the line for adulthood should be drawn somewhere between 18 years of age and an individual's "late twenties." Rather, like our Supreme Court in *Parks*, we will leave the line for adulthood at the age of 18. See *Parks*, 510 Mich at 244.

Brown next contends that the PSIR reflects that his and his father's mental-health history renders his within-guidelines sentence disproportionate. No details of the nature and extent of the mental-health issues are provided. Regardless, given that the information was included in the PSIR, such mental-health concerns were available for the trial court's consideration when fashioning Brown's sentence. We conclude that cursory references to potentially mitigating factors are insufficient to overcome the presumption that a within-guidelines sentence is proportional.

Brown further complains that his trial lawyer's argument at sentencing actively harmed him. We rejected that argument in Brown's prior appeal, see *Brown*, unpub op at 9-10, and the Supreme Court did not vacate that portion of our opinion. Therefore, we decline to reconsider that issue on appeal. Regardless, the effectiveness of Brown's lawyer at sentencing is not relevant to a determination of the circumstances surrounding the offense or the offender. See *Steanhouse*, 500 Mich at 459-460. Thus, the inquiry does nothing to aid our determination of whether Brown has overcome the presumption that his within-guidelines sentence is proportionate.

Brown also argues that he is facing a sentence that makes it harder for him to be rehabilitated because the corrections system prioritizes offenders for rehabilitative and educational programing based upon their early release dates. See *People v Stovall*, 510 Mich 301, 314 n 3; 987 NW2d 85 (2022). His argument ignores, however, that he has already demonstrated an

---

[3] See Primentel, *The Widening Maturity Gap: Trying and Punishing Juveniles as Adults in an Era of Extended Adolescence*, 46 Tex Tech L Rev 71 (2013); and Scott et al., *Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 Fordham L Rev 641 (2016).

[4] Shust, *Extending Sentencing Mitigation for Deserving Young Adults*, 104 J Crim Law & Criminology, 667 (2014).

[5] Kevin Davis, *The Brain Defense* (New York: Penguin Press, 2017).

unwillingness to be rehabilitated. As stated above, he had his probation revoked on two occasions and has shown a recidivist pattern of committing additional offenses while on bond. Given his history, the fact that he will not be given priority for rehabilitative services while in prison does not overcome the presumption that his within-guidelines sentence is proportionate.

Finally, Brown contends that his sentence was disproportionate to the seriousness of the circumstances surrounding himself and his offense because the sentence imposed will likely require him to spend the rest of his life in prison. Yet, "a defendant's age is insufficient to overcome the presumption of proportionality, especially when considered in light of a defendant's criminal record and the gravity of his offenses." *Purdle*, ___ Mich App at ___; slip op at 5-6.

In conclusion, Brown has not overcome the presumption that his within-guidelines sentence is proportionate. Rather, considering the seriousness of the circumstances surrounding Brown and his offenses, we conclude that the trial court did not abuse its discretion when imposing Brown's sentence.

Affirmed.

/s/ Michael J. Kelly
/s/ Michelle M. Rick
/s/ Christopher P. Yates